2021 IL App (2d) 180399-U
No. 2-18-0399
Order filed February 23, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CM-1067 |
| ISAAC J. VARGAS, | ) ) | Honorable James J. Konetski, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Presiding Justice Bridges and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1 *Held*: The defendant forfeited his argument that the trial court abused its discretion by allowing a police detective to testify that she was unable to corroborate his alibi because the defendant failed to specifically object at trial; even if the testimony was improperly admitted, the alleged error was harmless because there was overwhelming evidence as to the defendant's identity; the defendant forfeited his argument that the trial court erred by failing to instruct the jury regarding prior inconsistent statements where the instruction at issue was not part of the record on appeal; under the one-act, one-crime doctrine, the defendant's less serious conviction for battery is vacated because the State charged the defendant twice for the same physical act. The trial court is affirmed in part and vacated in part.

¶ 2     After a jury trial, defendant, Isaac J. Vargas, was found guilty of two counts of battery and one count of theft and sentenced to 175 days in jail and one year of probation. On appeal, defendant

argues 1) the trial court abused its discretion by allowing a police detective to testify that she was unable to corroborate defendant's alibi based on a surveillance video that was not produced at trial and for which no foundation was laid, 2) the trial court erred by denying defense counsel's request to instruct the jury on prior inconsistent statements, and 3) one of his convictions for battery must be vacated under the one-act, one-crime doctrine.

¶ 3   For the following reasons, we affirm in part and vacate in part.

¶ 4                                I. BACKGROUND

¶ 5                                A. Charges

¶ 6 The State charged defendant with three counts. Count I alleged battery (720 ILCS 5/12- 3(a)(1) (West 2016)), in that on November 30, 2016, "defendant knowingly and without legal justification, caused bodily harm to James F. Pocius, in that said defendant struck James F. Pociusin  the  face with an unknown object and kicked his face, causing James F. Pocius to loseconsciousness." Count II alleged theft (720 ILCS 5/16 (West 2016)), in that on November 30, 2016, defendant "[k]owingly exerted unauthorized control over property of James Pocius, being United States Currency *** having a total value of less than $500, intending to deprive James Pocius permanently of the use of the [United States Currency]." Count III alleged battery (*id*. § 12-3(a)(2)), in that on November 30, 2016, "defendant knowingly and without legal justification, made physical contact of an insulting or provoking nature with James F. Pocius, in that said defendant struck James F. Pocius in the face with an unknown object and kicked his face." Beforetrial the language "and kicked his face" was struck from the battery counts with the court's permission.

¶ 7                                B. Trial

¶ 8   The jury trial was held on May 15 and 16, 2018. Pocius testified as follows. On November30, 2016, Pocius had lived at the Red Roof Inn in Downers Grove for eight months. During that

time, defendant lived in a room above Pocius' room. They saw each other every few days. On November 30, 2016, at approximately 4 p.m., Pocius went to the front office to get his mail, including his paycheck. Pocius saw defendant sitting about 15 feet away from the counter where the mail was distributed. As the desk attendant handed Pocius his mail she said, "I got a check for you." Pocius then exited the office and went to the currency exchange to cash his check. Pocius returned to the Red Roof Inn, went to his room, retrieved his two dogs, and took them for a walk behind one of the vacant factories near the hotel. The dogs were friendly and had never bitten anyone.

¶ 9  Pocius testified that when he returned to the hotel about one-half hour later, he saw defendant about 30 feet away in the hotel parking lot. Pocius testified that defendant "came up to me, walking like Frankenstein, and said, 'I warned you.' And he coldcocked me, knocked me out." Defendant hit Pocius with his right hand in the side of Pocius' head. It felt like Pocius was "hit by a car." He did not know what defendant struck him with because "it came out of nowhere." Pocius testified, "I fell to the ground and then I got kicked in the face or stomped on. I don't know. I got hit again." Pocius curled up because he kept getting hit while he was on the pavement. Defendant hit Pocius hard; harder than he had ever been hit. Pocius temporarily lost consciousness. He saw stars and his ears were ringing.

¶ 10 Pocius testified that while he was on the ground, he felt hands "rumbling through his pockets." When he "came to" his dogs were licking his face. Pocius had $800 or $900 cash in his pocket from cashing his paycheck and $500 cash from a Christmas gift from his grandfather, and a cellphone. As Pocius felt the rifling in his pocket, he tried to get up but he was dizzy. Then Pocius felt a blow to his ear. Pocius thought he was struck on the ear by a foot, but he could not see because his eyes were closed. The blows left abrasions on his face and a gash on his head, and he was bleeding out of both ears. Subsequently, Pocius tried to call 9-1-1 on his cell phone but it was

gone. So he put his dogs in his car and went to the office where someone called 9-1-1. An ambulance and the police arrived shortly thereafter and the police took photos of Pocius which were admitted into evidence.

¶ 11 Pocius also testified that he had conflicts with defendant in the past. About eight months prior to the battery, defendant threw bags of clothes and garbage on Pocius' car. After that, defendant harassed him and his tires were slashed. Defendant told Pocius, "I only slashed one."

¶ 12  During cross-examination Pocius testified that although he had interactions with defendant before the incident, he did not know defendant's name. Pocius' paycheck came to the hotel office weekly in a windowed envelope showing his name, but the envelope did not indicate that it contained a check. Although Pocius testified that the office attendant said "I got a check for you" as she handed him the envelope, in his written statement to the police, he omitted the attendant's statement. Both Pocius and defendant owned Jeeps, defendant's Jeep was in disrepair, and Pocius saw that it had "switch[ed] spots."

¶ 13 Downers Grove Police Detective Amanda McLaughlin testified that she investigated the incident. McLaughlin went to the Red Roof Inn the day after the incident. Defendant approached McLaughlin in the parking lot. Defendant told McLaughlin that he knew she was there to speak with him and that he was not the person who hit Pocius because he was at Hooters with his sister within a specific timeframe that included the time of the incident. Defendant also told McLaughlin that it could not have been him who committed the offense, and he showed McLaughlin his palms and the tops of his hands. McLaughlin obtained contact information for defendant's sister.

¶ 14  McLaughlin also testified that on December 1, 2016, the day after the incident, she showed Pocius a photo lineup and he identified defendant as the person who struck him. McLaughlin attempted to review the surveillance camera footage from the area where the incident occurred but the cameras were not working because that part of the building was vacant. On January 4, 2016,

McLaughlin met with defendant at a Starbucks and he stated again that, at the time of the incident, he was with his sister at Hooters in Downers Grove. McLaughlin followed up by reviewing the Hooters' surveillance video and by trying to contact defendant's sister several times but she never returned McLaughlin's calls. Based on her investigation, McLaughlin was not able to corroborate defendant's statement.

¶ 15 During closing argument, the prosecutor stated, in relevant part:

"MS. MORESCHI [(ASSISTANT STATE'S ATTORNEY)]: Additionally, Detective McLaughlin told you she had a conversation with the defendant and he provided his alibi, that it couldn't possibly have been him because he was not at the Red Roof Inn at this time.

Detective McLaughlin also told you that she thoroughly investigated and followed up on that alibi and that he found not one—

MR. TOBIAS [(DEFENSE COUNSEL)]: Objection.

THE COURT: Overruled. You can continue.

MS. MORESCHI: —piece of evidence to corroborate it. Not one piece of evidence to corroborate the alibi that he wasn't at the Red Roof Inn at the time of the incident."

¶ 16 The trial court found defendant guilty of two counts of battery and one count of theft. On May 24, 2018, the court sentenced defendant to 175 days in jail and one year probation, and ordered restitution. Defendant filed a timely notice of appeal on May 29, 2018.

¶ 17                                II. ANALYSIS

¶ 18                      A. Detective McLaughlin's Testimony

¶ 19 Defendant argues that the trial court abused its discretion by allowing Detective McLaughlin to testify that she was unable to corroborate defendant's alibi based on a surveillancevideo that was not produced at trial and for which no foundation was laid. Defendant, thus argues

that McLaughlin's testimony that she was unable to corroborate defendant's alibi was improper opinion testimony. Defendant also asserts that this error was compounded by the State's remarks during closing argument regarding McLaughlin's testimony.

¶ 20 The State responds in part that defendant forfeited his lack of foundation argument by failing to make a specific objection at trial. Defendant counters that he did not forfeit the issue because the ground was apparent from the context of his objections, the trial court and the prosecutor understood the nature of the objections, and the issue was raised in his posttrial motion.

¶ 21 We agree with the State that defendant has forfeited his lack of foundation arguments. "[A] defendant must both specifically object at trial and raise the specific issue again in a posttrial motion to preserve any alleged error for review." *People v. Woods*, 214 Ill. 2d 455, 470 (2005). "If a defendant fails to satisfy either prong of this test, his challenge is considered waived on appeal." *Id*. A finding of forfeiture is "particularly appropriate when a defendant argues that the State failed to lay the proper technical foundation for the admission of evidence, and a defendant's lack of a timely and specific objection deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level." *Id*.

¶ 22 Here, defendant provided no specific objection at trial to the admission of McLaughlin's testimony that she was unable to corroborate defendant's alibi except at one point where he stated, "I don't know where this information is coming from."

¶ 23 The following relevant colloquy occurred:

"MS. McKAY [(ASSISTANT STATE'S ATTORNEY)]: Did you follow up with where [defendant] said he was?

McLAUGHLIN: Yes, I did.

MS. McKAY: And what did you learn?

MR. McMAHON [(DEFENSE COUNSEL)]: I am going to object.

THE COURT: Sustained.

MS. McKAY: Were you able to corroborate with what he said - -

MR. McMAHON: I am going to object.

MS. McKAY: —with what you learned?

THE COURT: You have got to let her finish.

Go ahead

MS. McKAY: Were you able to corroborate with what the defendant told you with your police investigation?

MR. McMAHON: I am going to object.

THE COURT: What's the specific legal objection?

MR. McMAHON: I believe there's already been a ruling on this.

THE COURT: Overruled. She can answer if that's your objection.

McLAUGHLIN: Yes, I was able to corroborate what he had told me previously.

MS. McKAY: And what was that?

McLAUGHLIN: That the timeframe he said he was at Hooters was—

MR. McMAHON: I am going—Judge, I am going to object.

THE COURT: Overruled. You can't keep interrupting everybody, okay?

You can finish your answer.

McLAUGHLIN: The timeframe that he answered he was at Hooters was not true to what I viewed on the surveillance video.

MR. McMAHON: Can I object?

THE COURT: Yeah. That last portion will be stricken about the surveillance video.

MS. McKAY: Detective, did anything corroborate the alibi that the defendant gave you?

McLAUGHLIN: No.

MR. McMAHON: Judge, I am going to object. I believe this is—I don't know where this information is coming from.

THE COURT: Well, the last question was[,] did anything corroborate what the defendant—

MS. McKAY: The defendant's alibi.

THE COURT: And she said no. That answer will stand."

¶ 24 As the above colloquy indicates, defendant did not make a trial objection to McLaughlin's testimony specifically based on the lack of foundation of the Hooter's surveillance video, the lack of foundation regarding McLaughlin's inability to corroborate defendant's alibi, or that her testimony was inadmissible because it was improper opinion testimony. Defendant's failure to specifically object at trial to the State's foundation for the admission of the testimony at issue results in forfeiture. In addition, defendant failed to raise the prosecutor's allegedly improper remarks in his posttrial motion.

¶ 25 Given that defendant has forfeited these issues, the issues are reviewable only if defendant establishes plain error. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). A defendant forfeits plain error review when he does not argue for it. *People v. Olaska*, 2017 IL App (2d) 150567, ¶ 134. Here, defendant did not argue for plain error review in either his initial brief or in reply. Thus, we hold defendant to his forfeiture.

¶ 26 Even if we were to reach the merits, we would find no error. "The admission of evidence is within the sound discretion of a trial court, and a reviewing court will not reverse the trial court absent a showing of an abuse of that discretion." *People v. Becker*, 239 Ill. 2d 215, 234 (2010). A trial court abuses its discretion where its decision is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it. *People v. King*, 2020 IL 123926, ¶ 35.

¶ 27 First, we note that the trial court struck McLaughlin's testimony regarding what she had viewed on the Hooter's surveillance video. Further, defendant's argument improperly labels Detective McLaughlin's testimony that she could not corroborate defendant's alibi, as an opinion. However, Mclaughlin never opined whether defendant's alibi was invalid or valid. The essentials of the alibi were presented to the jury without any opinion as to whether the alibi was either true of false. There is a substantive difference between lack of corroboration and proof that an alibi is false. It is not unreasonable to propound questions that explain the actions of a police officer after a conversation with the victim, a third-party witness, or the defendant. See *People v. Suastegui*, 374 Ill. App. 3d 635, 644 (2007). Detective McLaughlin's statement that she could not corroborate defendant's alibi showed the course of conduct that she took to investigate the incident. The statement was not offered to prove any issue, but was responsive to the prosecutor's questions about how the police investigation proceeded. See *id*. Therefore, the trial court did not abuse its discretion by allowing McLaughlin to testify that she was unable to corroborate defendant's alibi.

¶ 28 Further, even if the testimony at issue was improperly admitted, the alleged error was harmless. "The improper admission of evidence is harmless error if no reasonable probability exists that the verdict would have been different if the evidence at issue had been excluded [citation], such as where the evidence of guilt is overwhelming [citation]." *People v. Johnson*, 2012 IL App (1st) 091730, ¶ 65; see also *People v. Graves*, 2012 IL App (4th) 110536, ¶ 32 ("Error willbe deemed harmless and a new trial unnecessary when the competent evidence in the record establishes the defendant's guilt beyond a reasonable doubt and it can be concluded that retrial without the erroneous admission of the challenged evidence would produce no different result. [Citation.]" (Internal quotation marks omitted.)).

¶ 29 Here, there is no probability that the verdict would have been different if Detective McLaughlin's testimony that she could not corroborate defendant's alibi had been excluded. This

is so because the evidence against defendant, especially regarding his identity, was indisputably overwhelming. Pocius knew defendant prior to the incident as they lived at the same hotel for many months, Pocius recognized defendant as he walked towards him and then stood close to him before and after defendant struck and kicked him, and Pocius identified defendant in a photo lineup the day following the incident and identified him in the courtroom during the trial. Thus, even absent Detective Mclaughlin's testimony that she could not corroborate defendant's alibi, there is no probability that the outcome would have been different. Thus, the error, if any, was harmless beyond a reasonable doubt.

¶ 30 Defendant cites *People v. Jimenez*, 248 Ill. App. 3d 908 (1996) and *People v. Sparkman*,68 Ill. App. 3d 865 (1979), to support his argument that Detective McLaughlin's testimony that she could not corroborate defendant's alibi was improper opinion testimony. In *Jimenez*, after a shooting, a witness called the police and described the shooter. *Id*. at 910. The police officer who spoke to the witness testified that "he did not believe [the witness] had told him the truth about what he saw." *Id*. The appellate court held that the officer improperly expressed an opinion concerning the credibility of the witness's initial description of the shooter. *Id*. at 912.

¶ 31  In *Sparkman*, a police officer testified that he did not include an eyewitness's statement in his report because it was "unbelievable." *Sparkman*, 68 Ill. App. 3d at 870. The appellate court stated that the officer's "opinion was improper because no foundation was laid to establish his knowledge of [the witness's] reputation for truth and veracity, [but] the officer had previously testified to the inconsistencies in [the witness's] statements which were the basis of his opinion." *Id*. The court determined that the officer's opinion testimony did not deny the defendants a fair trial. *Id*. at 871.

¶ 32 Neither case cited by defendant aids his cause because in this  case,  McLaughlin's testimony did not contain an opinion. Rather, she testified that she could not corroborate

defendant's alibi, and she did not testify regarding defendant's credibility or whether or not she believed defendant. *Jimenez*, 248 Ill. App. 3d 908; *Sparkman*, 68 Ill. App. 3d 865.

¶ 33                                    B. Jury Instruction

¶ 34 Next, defendant asserts that the trial court erred by denying his request to give Illinois Pattern Criminal Jury Instruction 3.11 (IPI Criminal 3.11), regarding inconsistent statements. TheState responds that the issue is forfeited because the record does not contain a written version of the proposed instruction.

¶ 35  Our supreme court held that a defendant forfeits his jury instruction argument if "[n]eitherthe common law record nor the report of proceedings reveals the substance of [the] instruction." *People v. Emerson*, 189 Ill. 2d 436, 504 (2000). Here, although defendant refers to IPI Criminal 3.11 as the instruction he asked to be submitted to the jury during the jury instruction conference, the transcript of the conference indicates that defendant tendered an incomplete version of the instruction. Neither the common law record nor the report of proceedings reveals the precise substance of this instruction. Therefore, we are unable to review the merits of defendant's argument and determine the issue "defaulted." *Id.*

¶ 36                                    C. One-Act, One-Crime

¶ 37 Defendant argues, and the State concedes, that one of defendant's two convictions for battery must be vacated under the one-act, one-crime doctrine. Although defendant failed to raisethis issue in the trial court and has not argued plain error on appeal, he has not forfeited the issue.In *People v. Artis*, 232 Ill. 2d 156 (2009), our Supreme Court held that protections afforded to defendants by the one-act, one-crime rule are integral to maintaining the integrity of the judicial process. *Id*. at 168. Thus, despite the forfeiture, we will address defendant's argument. See also *People v. Coats*, 2018 IL 121926, ¶ 10 (addressing the defendant's one-act, one-crime argument,despite forfeiture).

¶ 38 The one-act, one-crime doctrine provides that a defendant may not be convicted of multiple offenses based on the same physical act. *People v. Almond*, 2015 IL 113817, ¶ 47, citing, *People v. King*, 66 Ill. 2d 551, 566 (1977). An "act" is defined as "any overt or outward manifestation which will support a different offense." *Almond*, 2015 IL 113817, ¶ 47. If an indictment charges the defendant for a single course of conduct, even if multiple theories of culpability are presented, the trial court cannot convict the defendant for separate criminal acts. *People v. Crespo*, 203 Ill. 2d 335, 345 (2001). Whether a violation of the one-act, one-crime rule has occurred is a question of law that is reviewed *de novo*. *People v. Smith*, 2019 IL 123901, ¶ 15.

¶ 39 Here, the State presented evidence at trial that defendant struck Pocius in the face with an unknown object. However, the State charged defendant with two counts of battery, each alleging the same physical act. The counts were distinguished only by alternate theories of culpability: count 1 alleged that defendant committed battery in that he "caused bodily harm to [Pocius]"; count 3 alleged that defendant committed battery in that he "made physical contact of an insulting or provoking nature[,]" in violation of sections 12-3(a)(1) and 12-3(a)(2) of the Criminal Code of 2012 (720 ILCS 5/12-3(a)(1), (2) (West 2016)), respectively. Because the State chose to charge the same physical act to sustain two charges of battery, only one battery conviction may stand. See *Crespo*, 203 Ill. 2d at 342-45. When a defendant is convicted of more than one offense in violation of the one-act, one-crime doctrine, the less serious offense must be vacated. *People v. Lee*, 213 Ill. 2d 218, 226-27 (2004). Here, defendant's conviction of insulting or provoking battery is a less serious offense than his conviction of bodily harm battery. See *People v. Young*, 362 Ill. App. 3d 843, 853 (2005). Thus, we vacate the conviction of insulting or provoking battery.

¶ 40                                      III. CONCLUSION

¶ 41 The judgment of the circuit court of Du Page County is affirmed in part and vacated in part.

¶ 42 Affirmed in part and vacated in part.