2021 IL App (2d) 190337-U
Nos. 2-19-0337 & 2-19-0561 Cons.
Order filed November 4, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 17-CM-945 18-CM-761 |
| | ) | |
| LARRY W. HUMPHREYS, | ) ) | Honorable William P. Brady, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Hudson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion in determining that the victim was unavailable as a witness based on lack of memory and allowing an officer's testimony under section 115-10.2a, and there was sufficient evidence to prove defendant guilty of domestic battery beyond a reasonable doubt. However, we vacated one of defendant's convictions under the one-act, one-crime rule. We therefore affirm in part and vacate in part.

¶ 2    Following two bench trials, defendant, Larry W. Humphreys, was convicted of three counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2016)) and sentenced to 18 months' imprisonment. In this consolidated appeal, defendant argues that: (1) the trial court erred in

allowing an officer's testimony under section 115-10.2a of the Code of Civil Procedure (735 ILCS 5/115-10.2a (West 2018)), because the victim was not unavailable to testify; (2) there was insufficient evidence to prove him guilty beyond a reasonable doubt of two of the counts; and (3) one of his convictions must be vacated under the one-act, one-crime rule. We agree with defendant's last argument and vacate his conviction in case number 18-CM-761 of domestic battery for knowingly making physical contact of a provoking nature with the victim. We affirm defendant's remaining convictions.

¶ 3                          I. BACKGROUND

¶ 4                          A. Case 17-CM-945

¶ 5     On September 23, 2017, defendant was charged by complaint in case number 17-CM-945 with two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2016)) and one count of unlawful interference with reporting a domestic battery (720 ILCS 5/12-3.5 (West 2016)). The charges stemmed from an incident on September 22, 2017, involving defendant's live-in girlfriend, Carrie Jones. Count I alleged that defendant knowingly caused bodily harm to Jones, a household member, by striking her with a closed fist on the head and back, causing visible injury requiring medical attention. Count II alleged that defendant made contact of an insulting or provoking nature with Jones by placing his hands upon her head and back. Count III alleged that he knowingly attempted to prevent Jones from calling 911 after striking her.

¶ 6     The trial court held a bench trial on May 31, 2018, for case number 17-CM-945 and for a previously-charged domestic violence case also involving Jones, case number 17-CM-723. The incident in case number 17-CM-723 occurred on July 22, 2017, and those charges are not at issue in this appeal.

¶ 7    Jones provided the following testimony, in pertinent part. She had short-term memory loss and sometimes did not remember things. On September 22, 2017, she was residing with defendant, and she continued to reside with him at the time of trial. Jones relied on defendant for transportation, shelter, food, and clothing. She did not remember defendant striking her on September 22, 2017. She remembered going to Kishwaukee Hospital that night, and she believed that she spoke to Officer Robert Smith of the Genoa Police Department. When asked if she remembered that defendant had struck her several times with a closed fist, choked her, and placed a plastic bag over her head, Jones replied, "No, that's not true." When asked if she told the police that, Jones responded, "I'm not saying I'm lying. We did have an argument but, you know, he did not put a bag over my head." When asked if she remembered defendant hitting her "at all," she replied in the negative.

¶ 8    Jones identified photographs that Officer Smith took of her at the hospital that showed bruising on her arm, legs, and back. When asked how the bruising occurred, Jones testified, "I was probably inebriated at that time and I probably had a blackout." She was "sure because [she could not] remember how that happened." Around that time, Jones was drinking up to a pint of whiskey per day, and she had been hospitalized six times for problems with her pancreas caused by her alcohol consumption. Defendant was not inebriated because he did not drink alcohol. Jones remembered that she had gotten into a physical altercation with two women on September 22, 2017.

¶ 9    After Jones's testimony, the State sought to admit her prior statements to Officer Ryan Baxa of the Genoa Police Department for impeachment and under section 115-10.2a of the Code of Civil Procedure (735 ILCS 5/115-10.2a (West 2018)). Defense counsel objected, arguing that Jones was not an unavailable witness and that the State had not complied with the statute's notice

requirement. Regarding Jones's availability, the trial court stated, "The problem is at different times she either didn't recall, denied it or acknowledged the same event." The trial court continued:

"And I think the first words out of her mouth were she doesn't remember a lot of anything, and as you quite adeptly brought out, she has some significant alcohol problems in her past [that] would affect her ability to remember things which would then get back to she testifies to a lack of memory, the memory could be because of alcoholism, it could be because she doesn't want to testify in this case, it could be a lot of different things, but she did testify to a lack of memory."

The trial court further stated, "She had some memory because she was able to identify the photographs. She was able to say that she at some point in time that she was not struck." It stated, "It may be that it can just be used for impeachment purposes, but I think she's already put her recollection of whatever occurred at issue based on her testimony up to this point, not only what she testified to or what she didn't testify to but the manner in which she testified" and that there were "sufficient lack of memory issues here" to grant the motion.

¶ 10    On the subject of notice, the trial court stated that it assumed that defense counsel had the police reports that contained whatever Jones had said to Baxa. Counsel stated that he had them since the time he filed his appearance but questioned whether the issue should have been addressed in a pretrial motion. The trial court stated that the statute did not require such a motion and that ultimately unavailability could be determined only at the time of trial.

¶ 11    Baxa testified that on September 22, 2017, he was dispatched to defendant's residence at about 6:15 p.m. for a domestic dispute. Defendant was cooperative and let Baxa into the home. He appeared to be slightly angry and said that Jones was crazy and was in the back room. Baxa asked him to step outside with another officer. Baxa found Jones in the bedroom. She was face down on

the bed, on her hands and knees, in a fetal position. Baxa saw redness and bruising on her back, and Jones was holding the back of her head and crying hysterically. Baxa called for an ambulance and later spoke to Jones in the emergency room. She said that defendant had struck her several times with a closed fist, choked her, and held a plastic bag over her head to restrict her breathing.

¶ 12    Baxa spoke with defendant, who denied coming into contact with Jones. Baxa observed that the skin on defendant's knuckles was broken and bleeding, but Baxa did not recall if there was any visible blood. Baxa did not take any photographs of defendant's injuries. Defendant claimed to have injured himself on a piece of garbage.

¶ 13    The trial court entered a directed finding of not guilty for the charges in case number 17-CM-723. It also entered a directed finding on count III in case number 17-CM-945.

¶ 14    Regarding the remaining charges, the prosecutor stated that Baxa testified that Jones told him that defendant had struck her several times with a closed fist without specifying where she was struck, and he argued that the lack of injury to her head, neck, or face did not rule out the possibility that she was struck multiple times on her body. The trial court stated that its recollection was that Jones testified that she got into a fight with two women. The prosecutor stated that he thought that she was referencing the July 22 incident, but he was not certain because her testimony was vague.

¶ 15    The trial court then stated as follows. Jones's testimony was problematic because her lack of recollection could have been due to alcoholism, because she wanted a place to live, or because she did not have a good memory. She said a lot of things that made her testimony incredible, so it "boil[ed] down to what evidence" was present, namely the broken skin on defendant's knuckle. That injury was not limited to but was consistent with an altercation. The trial court did not believe that Jones had been choked and had a plastic bag placed over her head because there was no

evidence of markings on her neck. A photograph showed bruising all the way up and down her legs, but there was no allegation or testimony that she was struck in the legs. Further, the bruising was of different colorations, indicating that it had occurred at different times. Another photograph showed Jones's arm, but there were no allegations about her arm in the complaint. A third photograph showed bruising on her back that was consistent with the complaint. Further, when Baxa first saw Jones, "she was obviously in an emotionally stressful state." The trial court found defendant not guilty of count I and guilty of count II.

¶ 16    Defendant filed a motion for a new trial on July 5, 2018, arguing, among other things, that he was not proven guilty beyond a reasonable doubt. He also raised "[s]uch other grounds and each and every error as may appear from the report of the proceedings of the trial, which is not presently available to the Defendant or his counsel." The trial court denied the motion many months later, on April 2, 2019. It sentenced defendant to 18 months' conditional discharge. Defendant timely appealed.

¶ 17                            B. Case Number 18-CM-761

¶ 18    Meanwhile, on August 8, 2018, defendant was charged in case number 18-CM-761 with two counts of domestic battery for an incident with Jones on August 7, 2018. Count I alleged that he knowingly caused Jones bodily harm by striking her in the face and back of the head with his fist. 720 ILCS 5/12-3.2(a)(1) (West 2018). Count II alleged that he knowingly made physical contact of a provoking nature with Jones, in that he placed his hands upon her head and face. 720 ILCS 5/12-3.2(a)(2) (West 2018).

¶ 19    Defendant's bench trial took place on April 2, 2019, immediately after his sentencing in case number 17-CM-945. Jones testified as follows. She had been living with defendant for a little less than five years. On August 7, 2018, she had been hurt in an accident while inebriated, and she

called an ambulance. Her memory of the incident was "not so clear." She may have provoked defendant, and he hit her. When asked what she meant by provoked, Jones testified:

> "I don't remember[,] but it was something, I think woke him out of a sleep or something like that. He has PTSD because *** he's a veteran[.] I am like kind of a caretaker where I calm him down[,] and I think I provoked him out of his sleep and, you know, he kind of just accidentally hit me."

Jones knew not to bother defendant or wake him up when he was sleeping because of his PTSD. However, she also sometimes woke him up when he asked her because she was his "alarm clock." The day in question, Jones could not find her pet rat and was scared and hysterical, so she woke him up to see if he could help her. Jones was about two or three feet away from defendant when she tapped him on his knee and called his name. She was "kind of screaming." Defendant "was a little clumsy because he was not awake," and he hit her on her forehead, between her eyes. Jones was bleeding as a result. Defendant was not wearing a ring, and his nail also did not cause the cut. Jones identified photographs of her injury.

¶ 20    Jones did not "know if he used his fist" or if she "ran into a table." Defendant was "a big man and so [she] thought *** something got knocked over or [she believed] he kind of just pushed [her] out of the way and he didn't realize that he was using such force." He used "his hand" and "was just putting [her] out of the way." Defendant got up and went to the kitchen. Jones did not have a phone, so she went to the residence of the neighbor below them and used her phone to call 911. Defendant did not follow her or restrict her from leaving. Jones was a convicted felon and currently had pending felony charges. She had not received an offer on those charges.

¶ 21    Genoa police officer Adam Schuring testified as follows. On August 7, 2018, at about 11:30 a.m., he was dispatched to defendant's residence for a domestic disturbance. The apartment

was very messy, and there were drops of blood on the kitchen floor. Defendant denied that any type of physical altercation had occurred. There was a cut on defendant's left forearm, but Schuring did not photograph it. Jones was in a neighbor's apartment. She was lying on the bathroom floor, crying hysterically, and appeared to be very scared. Jones had a cut on her head above her nose, and she had blood on her shirt. Schuring photographed Jones's injuries.

¶ 22    During closing argument, defense counsel argued that there was insufficient evidence that defendant had the requisite intent or knowledge because he was not coherent when he struck Jones. The trial court asked if there was evidence that he was not coherent, and defense counsel responded that there was no evidence that he was coherent. He said that the evidence was that defendant was sleeping, and that when he woke up, he struck Jones. The trial court asked if defense counsel was saying that anyone who is woken up gets one free punch. Defense counsel denied this assertion and stated that it was the defense's position that defendant acted without knowledge, as Jones testified that she woke him up in a state of hysteria. Defense counsel argued that there was no evidence of how much time elapsed before defendant hit her. The trial court asked if people sometimes become upset about someone waking them up. Defense counsel stated that there was no evidence of such a scenario. The trial court stated that defense counsel wanted it to assume that defendant had no idea what he was doing. Defense counsel replied that sometimes people's arms flail when they wake up.

¶ 23    The trial court asked the State to respond to Jones's testimony that it was an accident. The prosecutor argued that it was not an accident because Jones was standing two to three feet away from defendant when she tapped him on the knee, but she was struck in the face. The prosecutor also stated that Jones testified that she "provoked him," which was evidence that he was angry

when he woke up. The prosecutor argued that Jones may be labeling the incident as an accident because she still lived with defendant, and they were a couple.

¶ 24     The trial court stated that the injury was not simply a red mark or a bruise. It stated that the occurrence did not look like an accident, and though defendant's argument was that he did not act knowingly, defendant did not act like someone who had mistakenly caused an injury because he did not try to help Jones or call 911. The trial court stated that just as flight is evidence of guilt, defendant's "failure to do certain basic things to take care of a mistake he made is evidence that it wasn't a mistake." The trial court found defendant guilty of both counts.

¶ 25     Defense counsel asked that the trial court sentence defendant immediately, with the sentence being concurrent to defendant's sentence in case number 17-CM-945. The trial court imposed a concurrent term of 18 months' conditional discharge.

¶ 26     Defendant filed a motion for a new trial on April 25, 2019. He argued, *inter alia*, that he was not proven guilty beyond a reasonable doubt and that the trial court improperly shifted the burden of proof by stating that defendant's actions after the incident were not indicative of an accident. The trial court denied the motion on June 14, 2019. In making the ruling, it stated that defendant argued that he accidentally struck Jones when she woke him up because he was startled, but his subsequent actions were not consistent with that defense. The trial court stated that if such a consideration was improper, "the conviction probably shouldn't enter because [it did] rely on that," but it had not seen authority stating that it could not take into account defendant's behavior after Jones's injury.

¶ 27     Defendant timely appealed.

¶ 28                                  II. ANALYSIS

¶ 29                          A. Baxa's Testimony Under Section 115-10.2a

¶ 30    Defendant first argues that his domestic battery conviction in case number 17-CM-945 should be reversed because it is based entirely on Baxa's testimony, which the trial court improperly allowed under section 115-10.2a.

¶ 31    In order to preserve an issue for review, a defendant must object at trial and raise the issue in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Here, defendant objected to Baxa's testimony at trial and filed a posttrial motion. Section 116-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-1 (West 2018)) provides that motions for a new trial must be filed within 30 days following the entry of a verdict or finding of guilty. However, the trial court found defendant guilty on May 31, 2018, but he did not file a motion for a new trial until July 5, 2018, which was after the 30-day deadline. That being said, the trial court retains jurisdiction to entertain a posttrial motion that was not filed within 30 days but was still filed before the imposition of the sentence, and it has the discretion to grant a new trial until the time of sentencing. *People v. Harper*, 347 Ill. App. 3d 499, 502 (2004). Defendant filed his motion for a new trial before he was sentenced, so there is no jurisdictional concern present here.

¶ 32    Still, there is a problem with the contents of defendant's motion for a new trial, in that he did not directly raise the issue that he now asserts as error. Defendant argues that the issue is encompassed in his argument that he was contesting "[s]uch other grounds and each and every error as may appear from the report of the proceedings of the trial, which is not presently available to the Defendant or his counsel." Defendant argues that the record supports his assertion, as the trial transcript was prepared on June 14, 2019, nearly one year after he filed his posttrial motion. Defendant's argument is not persuasive, as a defendant must raise the specific issue in a posttrial motion to preserve it for review. *People v. Woods*, 214 Ill. 2d 455, 470 (2005). The admission of Baxa's testimony under section 115-10.2a was greatly contested, so defendant presumably would

not have needed a transcript to raise this issue. Even otherwise, although the trial transcript may not have been available when defendant first filed his motion for a new trial, the motion was not heard until about nine months later, giving him ample time to file an amended motion for a new trial, but there is no indication that defendant had requested the trial transcript at any time before filing a notice of appeal.

¶ 33    Defendant argues that if his argument is forfeited, relief is still proper under the plain error doctrine, and because any failure by defense counsel to properly preserve the issue constitutes ineffective assistance of counsel. The plain error doctrine allows a reviewing court to consider an unpreserved error where either (1) a clear error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, or (2) a clear error occurs that is so serious that it affected the trial's fairness and challenged the integrity of the judicial process. *People v. Sebby*, 2017 IL 119445, ¶ 48. The first step in a plain error analysis is to determine whether a clear or obvious error occurred. *People v. Jackson*, 2021 IL App (1st) 180672, ¶ 21.

¶ 34    For a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). The defendant must first establish that, despite the strong presumption that trial counsel acted competently and that the challenged action was the product of sound trial strategy, counsel's representation fell below an objective standard of reasonableness under prevailing professional norms such that he or she was not functioning as the counsel guaranteed by the sixth amendment. *People v. Manning*, 227 Ill. 2d 403, 416 (2008). Second, the defendant must establish prejudice. *People v. Valdez*, 2016 IL 119860, ¶ 14. In most situations this is done by showing a reasonable probability that the outcome of the proceeding would have been different absent counsel's errors.

*Id.* A failure to establish either prong of the *Strickland* test precludes a finding of ineffectiveness. *People v. Peterson*, 2017 IL 120331, ¶ 79.

¶ 35 Defendant's plain error and ineffective assistance of counsel arguments both require us to examine the merits of defendant's argument, so we proceed in that vein. Section 115-10.2a provides, in relevant part:

"(a) In a domestic violence prosecution, a statement, made by an individual identified in Section 201 of the Illinois Domestic Violence Act of 1986 as a person protected by that Act, that is not specifically covered by any other hearsay exception but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule if the declarant is identified as unavailable as defined in subsection (c) and if the court determines that:

(1) the statement is offered as evidence of a material fact; and

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) the general purposes of this Section and the interests of justice will best be served by admission of the statement into evidence.

(b) A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement, and the particulars of the statement, including the name and address of the declarant.

(c) Unavailability as a witness includes circumstances in which the declarant:

\* \* \*

(3) testifies to a lack of memory of the subject matter of the declarant's statement[.]

\* \* \*

(e) Nothing in this Section shall render a prior statement inadmissible for purposes of impeachment because the statement was not recorded or otherwise fails to meet the criteria set forth in this Section." 735 ILCS 5/115-10.2a (West 2018).

¶ 36     Defendant argues that although a trial court's decision whether to admit evidence is typically reviewed for an abuse of discretion, we should review this issue *de novo* because the trial court's ruling depended entirely on its interpretation of a statute. Defendant further argues that Jones was not unavailable under the statute because she testified only to a lack of memory regarding whether she conversed with Baxa and made a statement to him on September 22, 2017. Defendant maintains that Jones did not testify to a lack of memory regarding the subject matter of her alleged prior statement—*i.e.*, whether defendant struck her, choked her, and held a plastic bag over her head—but rather denied that those events occurred. Defendant asserts that the trial court obviously misconstrued the meaning of "subject matter" in section 115-10.2a(c)(3), confusing a declarant's failure to recollect making the prior statement with the declarant's lack of memory of the underlying event to which the statement relates. Defendant argues that Jones explained that the bruises on her body were likely the product of either a drunken blackout or a physical altercation she had been in earlier that day with two women. Defendant contends that although Jones's distress and bruises and defendant's skinned knuckles were circumstantial evidence of a domestic battery, there was no evidence establishing a causal nexus between those facts and any criminal conduct by him, apart from the alleged prior statement erroneously allowed under section 115-10.2a.

¶ 37    The State responds that we should review this issue for an abuse of discretion because the trial court based its ruling on the specific circumstances of the case and not on a broadly-applicable rule. See *People v. Cook*, 2018 IL App (1st) 142134, ¶ 29. The State argues that this case is not based on the interpretation of the phrase "subject matter" because the trial court distinguished between Jones's lack of memory regarding the events and her lack of memory regarding what she told Baxa about the events. The State adds that the trial court found her unbelievable based on her memory problems, thereby making a credibility determination and factual findings, and further necessitating an abuse of discretion standard of review. The State additionally argues that Jones did not claim only a lack of recollection of what she told Baxa, but also claimed numerous times a lack of memory of the event itself.

¶ 38    We agree with the State that the abuse of discretion standard is appropriate here. As defendant acknowledges, the admission of evidence is within the trial court's sound discretion and will not be disturbed absent an abuse of discretion. *People v. Thompson*, 2020 IL App (1st) 171265, ¶ 84. The trial court abuses its discretion where its decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the position adopted by the trial court. *Id.* As we subsequently discuss, the trial court did not make its ruling based on a mistaken interpretation that Jones's lack of memory of making the disputed statements to Baxa satisfied the statute's criteria of requiring that the declarant lack memory of the subject matter of their statement.

¶ 39    Jones testified that she had "short-term memory loss" and did not recall talking to Baxa on September 22, 2017. When asked, "Do you remember [defendant] striking you with closed fists?", she replied no. When asked if she remembered that defendant had struck her several times with a closed fist, choked her, and placed a plastic bag over her head, Jones answered, "No, that's not true." She then stated, "We did have an argument but, you  know, he did not put a bag over my

head." Jones replied in the negative when asked if she remembered defendant hitting her at all. When questioned how the bruising depicted in photographs occurred, she replied, "Like I said, I was *probably* inebriated at that time and I *probably* had a blackout." (Emphases added.) Jones testified that "[she was] sure because [she could not] remember how that happened." Jones then testified that she knew that two women had come over that day and started an argument with her, and she got into a physical altercation with them. She testified that at the time in question she was consuming up to a pint of whisky daily.

¶ 40    In discussing Jones's testimony, the trial court stated that "at different times she either didn't recall, denied it or acknowledged the same event." The trial court noted that Jones testified to having memory problems but did show that she had some memory of events because she was able to identify the photographs and "was able to say that she at some point in time that she was not struck." The trial court stated, "I think she's already put her recollection of whatever occurred at issue based on her testimony up to this point, not only what she testified to or what she didn't testify to but the manner in which she testified" and that there were "sufficient lack of memory issues here" to grant the motion.

¶ 41    The trial court's statements show that it believed that Jones had memory issues that were not limited to just not recalling talking to Baxa, but also regarding the evening's events. The trial court's position is supported by the record because although Jones stated that she did not remember defendant hitting her that night, she also testified that her injuries occurred because she "probably" was inebriated and "probably" had a blackout. Jones testified that "[she was] sure because [she could not] remember how that happened," which strongly indicates a lack of memory. The trial court also cited "the manner in which she testified," and it is the trier of fact's responsibility to assess witness credibility. See *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 51. The trial court

therefore acted within its discretion in ruling that Jones was unavailable as a witness under section 115-10.2a(c)(3) because she testified to "a lack of memory of the subject matter" of her subsequent statements to Baxa that defendant had committed acts of violence against her.

¶ 42    Defendant argues that even if Jones's prior statements were admissible for impeachment under section 115-10.2a, they were nonetheless inadmissible as substantive evidence because the State offered them only for impeachment and failed to comply with the statute's notice requirement. Defendant argues that subsections (b) and (e) of the statute (735 ILCS 5/115-10.2a(b), (e) (West 2018)) make it clear that hearsay introduced as substantive evidence is subject to the notice requirement, and hearsay introduced solely for impeachment is not. According to defendant, the inclusion of the alleged statement in Baxa's police report was insufficient to inform the defense of the State's "intention to offer the statement" as substantive evidence at trial and did not fulfill the statute's requirement to provide notice "in advance of the trial." 735 ILCS 5/115-10.2a(b) (West 2018). Defendant further argues that the trial court initially admitted the prior statement only for impeachment under section 115-10.2a but then heeded the State's invitation during closing remarks to consider the statement substantively.

¶ 43    The State argues that the prosecutor sought admission of Baxa's testimony both as impeachment "and then under" section 10.2a based on Jones's unavailability as a witness. The State argues that the trial court did not abuse its discretion in finding, under the circumstances of this case, that there was sufficient notice, as defense counsel acknowledged that he had Baxa's police reports in his possession since filing his appearance. The State asserts that the trial court was correct that section 115-10.2a does not require a pretrial motion because the trial court may not know that the witness has a lack of memory until the witness testifies, which is what occurred here. The State further argues that defendant did not request a continuance at that time or seek to

recall Jones to testify in his case in chief. Last, the State argues that even if, *arguendo*, the evidence could only be considered for impeachment, the record still supports the guilty verdict based on defendant's bruised knuckles, Jones's position and hysterical crying in the bedroom when Baxa found her, and the redness and bruising on her back.

¶ 44    We agree with the State that the prosecutor asked that Baxa's testimony be considered for both impeachment and substantive purposes. As the State highlights, the prosecutor sought to introduce the testimony "first" as impeachment "and then under" section 10.2a based on Jones's unavailability as a witness. If the prosecutor had sought to admit the testimony only as impeachment, a discussion of section 10.2a would not have been necessary. Our interpretation is supported by the prosecutor's later statements, as when arguing against defendant's motion for a directed verdict in this case, the prosecutor stated, "I think Your Honor did rule that that statement can come in substantively through the officer." Additionally, when arguing against allowing Baxa's testimony, defense counsel asserted that the defense did not receive sufficient notice of the testimony under section 10.2a(b). The parties and the trial court proceeded to debate the issue. Satisfying section 10.2a(b) is necessary only if admission of the testimony is sought as substantive evidence, which further shows that the prosecutor sought to have it admitted substantively, and that the trial court allowed it for this purpose.

¶ 45    On the issue of whether defendant received sufficient notice, the statute states:

> "A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement, and the particulars of the statement, including the name and address of the declarant." 735 ILCS 5/115-10.2a (West 2018).

We conclude that the trial court did not abuse its discretion in ruling that this requirement had been met through the State's tender of Baxa's police report to defendant. As the trial court pointed out, it would not be able to determine that a witness was unavailable by virtue of lack of memory until it heard the witness's testimony. Significantly, defense counsel admitted that the police report had been in his possession since he entered his appearance, and defendant does not argue that Baxa testified to anything that was not contained within the report, such that there would have been no surprise to defendant. The requirement is also akin to a discovery provision. Reversals are not required for discovery violations absent a showing of surprise or undue prejudice (*People v. Collins*, 2021 IL App (1st) 170597, ¶ 73), which defendant has not shown here.

¶ 46    For these reasons, the trial court did not abuse its discretion in ruling that Jones was unavailable as a witness and allowing Baxa's testimony under section 115-10.2a. As we have found no error in the trial court's ruling, it follows that defendant cannot meet the requirements of demonstrating plain error or ineffective assistance of counsel.

¶ 47                          B. Sufficiency of the Evidence

¶ 48    Defendant next challenges the sufficiency of the evidence in case number 18-CM-761, arguing that the State failed to prove that he acted knowingly when he struck Jones upon waking. When examining the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The trier of fact has the responsibility to assess witnesses' credibility, weigh their testimony, resolve inconsistencies and conflicts in the evidence, and draw reasonable inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will not reverse a criminal conviction based on insufficient evidence unless the

evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 49  A person commits domestic battery where he knowingly, without legal justification, causes bodily harm to or makes physical contact of an insulting or provoking nature with a family or household member. 720 ILCS 5/12-3.2 (West 2018). Thus, intent is an essential element of battery, and the State has the burden of proving that a defendant's conduct was knowing or intentional as opposed to accidental. See *People v. Lee*, 2017 IL App (1st) 151652, ¶ 19. Defendant points out that a person acts knowingly if he is "consciously aware that the result is practically certain to be caused by his conduct." 720 ILCS 5/4-5 (West 2018). He further points out that an essential element of every criminal offense, in addition to the mental state, is that the prohibited act was voluntary. 720 ILCS 5/4-1 (West 2018). Defendant cites *People v. Martino*, 2012 IL App (2d) 101244, ¶ 13, where this court stated that acts resulting from reflex or that are not a product of the effort or determination of the defendant, either conscious or habitual, are involuntary acts for which the defendant cannot be held accountable. Defendant also notes that involuntary acts such as those committed during a state of automatism are not controlled by the conscious mind, so a defendant committing such involuntary acts cannot be criminally responsible for them. *People v. Grant*, 71 Ill. 2d 551, 558 (1978).

¶ 50  Defendant argues that Jones's testimony made clear that defendant struck her in a state of automatism upon waking, and that his conduct was thus reflexive and accidental, rather than voluntary and knowing. Defendant maintains that according to Jones's testimony, he lashed out in a reflexive manner when an admittedly inebriated, screaming, and hysterical Jones woke him up by calling his name and making physical contact with his body. Defendant asserts that there was no evidence that he was simply angry about being awoken, as the trial court suggested. He argues

that the trial court's conclusion that he acted knowingly because he failed to aid Jones or call 911 was likewise unsupported by the evidence, because the only evidence regarding his actions after striking Jones was that he went to the kitchen and she left the apartment. He argues that there was no basis to infer that he even had the chance to render aid or the means to call 911 when Jones immediately left the apartment to borrow a neighbor's phone. Defendant argues that going to the kitchen and attempting to render aid were also not mutually exclusive, as he may have been getting an ice pack or towel for Jones. According to defendant, the trial court mistook the absence of evidence for evidence of absence, and there was insufficient evidence to prove that he knowingly struck Jones.

¶ 51    The State argues that the circumstantial evidence showed that defendant's actions after Jones woke him up were not involuntary or committed under a state of automatism. The State argues that although Jones first testified that it was an accident, she then testified, "I think I may have provoked him and he hit me." It notes that although Jones's testimony was inconsistent, she clearly testified that he hit her in the forehead between the eyebrows, and that the photographs introduced into evidence showed a cut on her forehead and blood on her shirt. The State highlights that Jones testified that the cut was not caused by a ring or nail, and it argues that given the nature of the wound, it is hard to believe that it was caused by an involuntary flailing of defendant's arm upon being awoken. The State further notes the testimony that defendant denied any physical altercation with Jones and that Jones was hysterically crying and very scared when Schuring found her laying on the neighbor's bathroom floor. The State argues that defendant's theory that his action was accidental was further belied by defendant's subsequent actions, as a more logical reaction to an accident would have been for defendant to aid Jones himself and then call 911, or go to a neighbor's house to call if he did not have a phone. The State maintains that if Jones left

while defendant was getting a towel or ice pack, defendant would logically have followed Jones when he discovered her gone.

¶ 52    We conclude that, viewing the evidence in the light most favorable to the State, there was sufficient evidence that defendant acted knowingly. Jones testified that her memory of the incident was "not so clear" but that she thought that she woke defendant up and "provoked" him. The use of the word "provoked" could indicate that defendant was angry. Jones testified that "he kind of just accidentally hit" her on her forehead, between her eyes, causing her to bleed. Defendant does not dispute that he caused Jones's injury but argues that it was accidental. However, Jones testified that she was about two or three feet away from defendant when she tapped him on his knee and called his name. Defendant used "his hand," but the cut was not caused by a ring or defendant's nail. Jones thought that defendant "pushed" her out of the way. Given Jones's location when she woke up defendant, the trial court could reasonably infer that defendant accidentally flailing his arm would not cause an injury to Jones's forehead, especially the type of cut shown in the photographs.

¶ 53    Afterwards, defendant went to the kitchen, and Jones went to the neighbor's house to call 911. When Schuring arrived, defendant denied that any type of physical altercation had occurred rather than stating that he had accidentally hit Jones. As the State points, defendant also did not take any overt action that would indicate that the hit was unintentional, such as following or finding Jones to assist her. Schuring testified that Jones was lying on the neighbor's bathroom floor, crying hysterically, and appeared to be very scared. Based on all of these considerations, a rational trier of fact could have found that defendant acted knowingly when he hit Jones and was guilty of domestic battery beyond a reasonable doubt.

¶ 54                                C. One-Act, One-Crime

¶ 55    Last, defendant argues that we should vacate his domestic battery conviction for count II in case number 18-CM-761, as both convictions in that case arose from the same act and thus should have merged under the one-act, one-crime rule. Under this rule, multiple convictions are improper if they are based on the exact same physical act. *People v. Coats*, 2018 IL 121926, ¶ 11. A violation of the one-act, one-crime rule constitutes plain error and may be addressed for the first time on appeal. *Id.* ¶ 10. Whether such a violation has occurred is a question of law that we review *de novo*. *Id.* ¶ 12.

¶ 56    Defendant notes that count I alleged that he caused bodily harm to Jones by striking her in the face and back of the head with his fist, whereas count II alleged that he made physical contact of a provoking nature with Jones by placing his hands upon her head and face. Defendant argues that although each count alleged that he committed a different act, the evidence showed that he committed only a single act that could be construed as battery—striking Jones when she woke him up. Defendant points out that when a defendant is improperly convicted of more than one crime arising out of precisely the same act in violation of the one-act, one-crime rule, all but the most serious conviction should be vacated. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). Defendant cites *People v. Young*, 362 Ill. App. 3d 843, 853 (2005), for the proposition that a domestic battery offense involving insulting or provoking contact is less serious than the same offense involving bodily harm.

¶ 57    The State concedes error on this issue and agrees that one of defendant's convictions should be vacated. However, it argues that under *In re Samantha V.*, 234 Ill. 2d 359, 379-80 (2009), we must remand the case for the trial court to consider which is the more serious offense because the class and punishment for the offenses are the same. It argues that *Young* was decided prior to and superseded by *In re Samantha V.*

¶ 58    Defendant responds that it is axiomatic that an offense requiring proof of knowing causation of actual injury is more serious than an otherwise identical offense which requires no such proof. Defendant argues that just because *In re Samantha V.* was decided after *Young* does not mean that this court reached the wrong conclusion in *Young*.

¶ 59    We agree with the parties that one of defendant's convictions must be vacated under the one-act, one-crime rule because they both stem from the same physical act of defendant hitting Jones when she woke him up. The only issue is whether we may vacate one of the convictions or whether we must remand the case to the trial court to determine which conviction to vacate. In *In re Samantha V.*, the supreme court stated that for a violation of the one-act, one-crime rule, the less serious offense should be vacated. *Id.* at 379. The court stated that the most serious offense is the one with the greatest punishment, and that if the punishments are equal, the most serious offense is the one with the more culpable mental state. *Id.* The crimes at issue there, aggravated battery that causes great bodily harm and aggravated battery on a public way, were both class 3 felonies that required that the accused acted knowingly and intentionally. *Id.* The supreme court stated that it could therefore not determine which crime was the more serious offense, and it remanded the case to the trial court to make this determination. *Id.*; see also *People v. Artis*, 232 Ill. 2d 156 (2009) (relied on by *In re Samantha V.*).

¶ 60    Here, both convictions have the same punishment and both require that the defendant acted knowingly. See 720 ILCS 5/12-3.2(a), (b) (West 2018). In holding in *Young*, 362 Ill. App. 3d at 853, that domestic battery based on contact of a provoking nature when less serious than domestic battery based on bodily harm in, we cited *People v. Daniels*, 331 Ill. App. 3d 380, 386-87 (2002), where the court held that an aggravated criminal sexual assault conviction based on the infliction of bodily harm was more serious than one based on the display of a dangerous weapon, and *People*

*v. Pierce*, 223 Ill. App. 3d 423, 443-44 (1991), where the court held that the most serious murder conviction among those based on acts creating a strong probability of death was the one involving the greatest amount of injury. In *Artis*, the supreme court stated that where there are "multiple convictions for aggravated criminal sexual assault based upon the same physical act, none of the offenses are more serious than any other," so the cause should be remanded to the trial court to make that determination. *Artis*, 232 Ill. 2d at 172, 177. This holding possibly undermines *Daniels* but not *Pierce*. We therefore believe that *Young* is still good law and that a conviction of domestic violence based on contact of a provoking nature is less serious than a conviction of domestic battery based on bodily harm, and we vacate defendant's conviction of count II in case number 18-CM-761. We note that many cases have followed *Young* on this issue even after *Artis* and *In re Samantha V*. See *People v. Vargas*, 2021 IL App (2d) 180399-U, ¶ 39; *People v Perez*, 2016 IL App (1st) 141130-U, ¶ 29; *People v. Perkins*, 2015 IL App (4th) 140202-U, ¶ 17; *People v. Duberry*, 2014 IL App (2d) 121362-U, ¶ 33; *People v. Mullen*, 2014 IL App (2d) 120970-U, ¶ 16; *People v. Ellis*, 2012 IL App (2d) 101302-U, ¶ 21.

¶ 61                                III. CONCLUSION

¶ 62    For the reasons stated, we vacate defendant's conviction of count II in case number 18-CM-761. We affirm the judgment of the circuit court of De Kalb County in all other respects.

¶ 63    Affirmed in part and vacated in part.